[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION I. INTRODUCTION
This is an appeal by Michael D'Amato and Linda D'Amato (appellants) from a decision of January 20, 1998, by the Town of Groton Zoning Commission (Commission) which approved a special permit for the applicant, Merrimack Partners (Merrimack) on land owned by Richard W. Wallace and Priscilla Wallace. The Commission, Merrimack and the Wallaces are defendants herein.
The Commission's approval of a special permit allows the establishment of a Residential Life Care Community[1] complex consisting of two buildings in the Town of Groton.
The appellants claim that the applicant for the special permit must comply with zoning regulations § 7.1-1 (A through J) in order for the application to be approved, that the applicant did not comply with the applicable zoning regulations and that the Commission approved the special permit without determining whether the standards and relevant zoning regulations are satisfied and, thereby, the Commission acted illegally, arbitrarily and in abuse of its discretion.
Merrimack asserts that zoning regulations § 7.1-1 (A through J) are prerequisites for the review of the planning commission, not the zoning commission, and review by the planning commission is to follow. The Town (Commission) concurs with the interpretation of the regulations of Merrimack. The Wallaces did not appear. CT Page 12378
 II. JURISDICTION
"[General Statutes] Section 8-8 explicitly governs appeals from decisions of zoning commissions, planning commissions, combined planning and zoning commissions and zoning boards of appeal." Ensign-Bickford Realty Corp. v. Zoning Commission,245 Conn. 257, 265 n. 10, 715 A.2d 701 (1998). "Section 8-8 . . . provides, in subsection (b), that `any person aggrieved by any decision of a [zoning commission] may take an appeal to the superior court for the judicial district in which the municipality is located'. . . ." Id., 264.
 A. Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). "[P]ursuant to [General Statutes] § 8-8(a)(1), a person may derive standing to appeal based solely on his status as an abutting landowner or as a landowner within one hundred feet of the subject property."Zoning Board v. Planning Zoning Commission, 27 Conn. App. 297,301, 605 A.2d 885 (1992).
Aggrievement is the standard jurisdictional prerequisite to an appeal from an administrative agency decision. See Local 1303 Local 1378 v. FOIC, 191 Conn. 173, 177 (1983). Thus, the question of aggrievement is a jurisdictional one and claims of aggrievement present an issue of fact for the determination of the court, with the burden of proving aggrievement resting on the plaintiff who has alleged it. Nader v. Altermatt, 166 Conn. 43,59 (1974). Aggrievement itself cannot be admitted. It is a legal conclusion for the court to make after proof. See I.R. StitchAssociates, Inc. v. Town of West Hartford, 155 Conn. 1, 3 (1967).
The parties stipulated to two facts: (1) the appellants, at the time of having taken their appeal, own land recorded at Volume 605, page 364 of the Groton land records; and (2) said parcel of appellants, as depicted in Exhibit 164, abuts the parcel which is the subject of the special permit.
Accordingly, the court finds that the appellants are abutting landowners to the property that is the subject of the special permit and are thereby aggrieved by the decision of the Commission. CT Page 12379
 B. Timeliness Service of Process
"If an appeal is authorized by statute, there must be strict compliance with it." Manchester Environmental Coalition v.Planning Zoning Commission, 41 Conn. Sup. 184, 192,564 A.2d 639 (1988). General Statutes § 8-8(b) provides, in pertinent part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes."
Subsection (e) of § 8-8 further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The Commission published notice of its decision in The Day of New London on January 27, 1998. On February 6, 1998, the appellants effectuated service of process on all named defendants.
The court finds, therefore, that the appellants commenced their appeal in a timely fashion by service of process upon the proper parties.
 III. SCOPE AND STANDARD OF REVIEW
"[T]he trial court, in appeals from planning and zoning authorities, [must] search the record to determine the basis for decisions made by those authorities. . . . [The] commission's failure to state on the record the reasons for its actions, in disregard of General Statutes § 8-3, renders appellate review more cumbersome, in that the trial court must search the entire record to find a basis for the commission's decision." (Citations omitted; internal quotation marks omitted.) Paige v. Town Plan Zoning Commission, 235 Conn. 448, 464, 668 A.2d 340 (1995).
"Review of zoning commission decisions by the Superior Court is limited to a determination of whether the commission acted arbitrarily, illegally or unreasonably. . . . [T]he commission's conclusions will be invalidated only if they are not supported by substantial evidence in the record." (Citations omitted.)Cybulski v. Planning and Zoning Commission, 43 Conn. App. 105, CT Page 12380 110, 682 A.2d 1073, cert. denied, 239 Conn. 949, 686 A.2d 123
(1996). "In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." (Citations omitted.) Samperi v. Inland Wetlands Agency,226 Conn. 579, 587, 628 A.2d 1286 (1993). "[O]n factual questions . . . a reviewing court cannot substitute its judgment for that of the agency. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission." (Citations omitted; internal quotation marks omitted.) Irwin v. Planning Zoning Commission,244 Conn. 619, 629, 711 A.2d 675 (1998).
The limitations on the scope of judicial review has been codified in Connecticut General Statutes § 4-183(j), in relevant part:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions or decisions are: . . . (4) effected by other errors of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal. . . ."
 IV. DISCUSSION
The zoning regulations for the Town of Groton are enforced by the zoning commission. Groton Zoning Regs., § 8.1-1. The zoning commission is separate and distinct from the town's planning commission.[2] The authority to issue a special permit is vested in the zoning commission, acting by and through the Zoning Official. Groton Zoning Regs., §§ 8.1-1, 8.3-1; General Statutes §§ 8-2, 8-12. Upon receipt of an application for a special permit, the zoning commission "shall refer the application to the CT Page 12381 planning commission for review and recommendations to be submitted prior to or at the public hearing." Groton Zoning Regs., § 8.3-7. In addition, a site plan review and approval by the planning commission is required before issuance of a special permit. Groton Zoning Regs., § 8.4-1. An application for a special permit for a Residential Life Care Community, like the application in the present case, is subject to site plan approval by the planning commission. Groton Zoning Regs., § 7.1.
The zoning regulations clearly indicate that an application for a special permit for a Residential Life Care Community is subject to the conditions listed in subparagraphs (A) through (J) of § 7.1-1. See Groton Zoning Regs., §§ 7.1, 7.1-1. Moreover, the actual application in the present case expressly invokes the applicability of § 7.1-1. (See Groton Zoning Commission Exhibit 1). The application specifically refers to § 7.1-1 in two locations,[3] and no other zoning regulation is referred to within said application. In addition, transcripts from both the public hearing of December 3, 1997, and the special meeting of January 20, 1998, demonstrate that the applicant's counsel and the Commission's staff unequivocally believed in the applicability of § 7.1-1 of the zoning regulations to the subject application. (See generally Zoning Commission Exhibits 2 and 3). Although counsel for the applicant has since represented to this court that, in his opinion, subparagraphs (A) through (J) are the "domain of only the planning commission," not the zoning commission, this position is inconsistent with his comments at the public hearing, the application itself, the applicant's brief and the express language of § 7.1-1.[4]
Accordingly, the court finds that the subject application for a special permit which was before the Commission is necessarily governed by the requirements and conditions set forth in § 7.1-1 (A)-(J) of the zoning regulations.
In pertinent part, § 7.1-1 states: "Residential Life Care Communities are permitted uses in the RS, R, RMF, RU, OMF, and IP districts, subject to approval of a special permit and the following conditions:. . . . (H). The provisions of Section 6.7-6 shall apply to all Residential Life Care Communities except for item F. . . . Residential Life Care Communities may obtain reductions or waivers from the other requirements of Section 6.7-6 in accordance with the provisions of Section 6.7-6 L. . . ." CT Page 12382
Therefore, the plain language of § 7.1-1(H) incorporates the requirements and conditions set forth in § 6.7-6.[5]
Section § 6.7-6, in turn, provides numerous detailed building and site requirements, such as storage area, balcony and patios, exterior walls, entry ways, accessory structures, setback requirements, distances between buildings, recreation area, parking, public sewers, utilities and others.
This court, therefore, will review the Commission's decision to grant the applicant's special permit in light of the requirements and conditions set forth in both § 7.1-1(A)-(J) and § 6.7-6 of the zoning regulations.
"When the [zoning] commission acts on a special permit . . . it acts in an administrative capacity and its function is to determine whether the applicant's proposed use is one that satisfies the standards set forth in existing regulations and statutes." Cybulski v. Planning and Zoning Commission, supra,43 Conn. App. 110. "It is well settled that in granting a special permit, an applicant must satisf[y] all conditions imposed by the regulations. . . . The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied." (Internal quotation marks omitted.) ConnecticutResources Recovery Authority v. Planning Zoning Commission,46 Conn. App. 566, 569, 700 A.2d 67, cert. denied, 243 Conn. 935,702 A.2d 640 (1997). However, the zoning commission "does have discretion to determine whether the proposal meets the standards set forth in the regulations." Irwin v. Planning ZoningCommission, supra, 244 Conn. 628. "If, during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special permit regulations are met, then it can no longer deny the application." Id.
"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court [must] decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." Id., 627-28. "If . . . the zoning commission construed the special exception regulations beyond the fair import of their language, then the zoning commission acted in an arbitrary and illegal manner." Id., 628-29. CT Page 12383
A special permit is a use which zoning regulations expressly permit under conditions specified in the regulations. The agency is governed by existing provisions of its own regulations. Its function is to determine whether (1) the applicant's proposed use of the property is expressly permitted under the commission's regulations; (2) whether the standards and the relevant zoning regulations are satisfied; and (3) whether conditions necessary to protect public health, safety, convenience and property values, as provided by Connecticut General Statutes § 8-2, can be established. See Fuller, Land Use Law and Practice, Connecticut Practice Series, West, pp. 569-570 (1993). Our inquiry in the case at bar focuses on prong number 2: whether the standards and the relevant zoning regulations are satisfied.
The agency's conclusion must be reasonably supported by facts discernible in the record. On factual issues material to the reasons for the agency's action, the credibility of witnesses is within the province of the administrative agency, the commission.
In the present case, a search of the record reveals no facts or reasons in support of the Commission's approval of the special permit. The Commission did not specifically address subparagraphs (A) through (J) of § 7.1-1, or § 6.7-6. The Commission made no findings as to whether a proposed building exceeds the height requirements of § 7.1-1(G); the Commission made no finding as to whether the requirements of § 7.1-1(H), including § 6.7-6(A), (B), (D) or (G), were satisfied; the Commission made no findings as to whether the special permit objectives of § 8.3-8(A), (B) and (C) have been complied with.
Having undertaken a thorough search of the entire record, this court is unable to make a finding that the application satisfies the requirements and conditions of the applicable zoning regulations. It appears that the Commission declined to address the specific requirements of subparagraphs (A) through (J) of § 7.1-1 and § 6.7-6 with the intent that the planning commission, at some later date, would grant reductions and waivers to the applicant. However, the Commission nevertheless granted the special permit without any such condition. The court realizes that the planning commission is authorized to grant such reductions or waivers from the requirements of §§ 7.1-1 and § 6.7-6 upon its subsequent site plan review; however, that does not obviate or circumvent the authority and the duty of the zoning commission to determine whether there is compliance with CT Page 12384 the regulations in the first instance.
Upon review of the application itself and supporting documents, the court finds that there was not substantial evidence before the Commission to support its implicit finding that the requirements of §§ 7.1-1 and § 6.7-6 were satisfied. Because the court deems compliance with those regulations as prerequisites to the granting of a special permit for a Residential Life Care Community, the Commission's decision was arbitrary, illegal and an abuse of its discretion.
Accordingly, the appeal is sustained.
Miano, J.