[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Briad Lodging Group Rocky Hill, L.L.C., from a condition contained in a November 15, 2000 approval by the defendant, Planning and Zoning Commission ("the commission"), of a special permit/site plan application submitted by the plaintiff
The record shows the following. On June 7, 2000, the plaintiff CT Page 16869 submitted to the commission a site plan application and a special permit application for the construction of a Marriott Courtyard Hotel and a Marriott Residence Inn at the intersection of West Street and Cromwell Avenue in Rocky Hill. (Return of Record ("ROR"), Items 3-5.) The projected construction had frontage and an access point on Cromwell Avenue, which is Connecticut Route 3, a state highway. (ROR, Item 72.) This ingress/egress point is approximately 150 yards from the West Street-Cromwell Avenue intersection and directly across from the entrance to France Street. (ROR, Item 72.)
Early in the process of deciding on these applications, the commission was advised by the town planner and the police department that the project called for a traffic light at the intersection of its proposed access point and Route 3. (ROR, Items 7, 25.) It was likely, according to the police department, that multiple accidents would occur without an "STC [State Traffic Commission] signal." (ROR, Item 7.) The police department also gave this opinion after viewing revised plans. (ROR, Item 50.) On August 23, 2000, at a hearing on the applications, the plaintiff's representatives commented on the need for a traffic light at the proposed access point to the complex. The plaintiff's attorney stated: "I think in the most recent memo [of the town planner] that there was a comment that the police department has made a recommendation that they believe a traffic light is warranted. But, again, there is a pending application before the State Traffic Commission to address that issue, but certainly, we are amenable, and we are certainly open to discuss with this particular Commission about whether or not there is need for a traffic light. But if there is a traffic light, I'm sure it's going to serve several functions." (ROR, Item 64, p. 11.) The plaintiff's engineer stated that the plaintiff did not initially intend to put a traffic light at the project's ingress/egress, but "with the township's concerns, we may have a change of direction there." (ROR Item 64, p. 15.)
The hearing continued on September 27, 2000. Whether the light should be installed by the plaintiff continued to be a major issue. The plaintiff's engineer stated that he had met once with the State Traffic Commission to explain a plan that included the re-development of the intersection at Cromwell and West Streets, thereby avoiding another light at the near-by project access site. The State Traffic Commission was interested in seeing if this was the approach to take. (ROR, Item 67, pp. 6-7, 43-44.) The plaintiff's representatives repeatedly stated, however, that they would renew the commission's position that there should be a traffic light at the access point in their next meeting with the State Traffic Commission. (ROR, Item 67, pp. 41-44, 53.)
The commission was convinced that once the commission strongly supported the new light, the State Traffic Commission would reject the CT Page 16870 model calling solely for the revamping of the Cromwell-West intersection in favor of both the reconfiguration and the second light. Commissioner Webster understood that the State Traffic Commission would approve the second light if the town requested it. (ROR, Item 67, p. 42.) Commissioner Harrison indicated that the town had been turned down in the past by the State Traffic Commission, but this time "they're going to request a traffic light there." (ROR, Item 67, p. 43.) Commissioner Stewart remarked that the State Traffic Commission should be informed "that the local board wants it." (ROR, Item 67, p. 54.) The plaintiff's attorney concluded the debate by stating that "[the plaintiff] is really going to be building to try to resolve . . . a pre-existing problem, and we're saying we're committed to do that. We're committed to trying to resolve it." (ROR, Item 67, p. 54.)
Also at the hearing of September 27, 2000, the commission noted that the current traffic at the intersection of West Street and Cromwell Avenue was at a level of Service F. In addition, the circumstance of cars exiting France Street only made the traffic situation more problematic. (ROR, Item 67, pp. 47, 50, 52.) The plaintiff produced the testimony of a traffic consultant who agreed with the commissioners' traffic rating, but argued that his proposed revisions to the West-Cromwell intersection would alleviate the difficulties. (ROR, Item 67, p. 50.) Commissioner Webster doubted whether these proposed changes would sufficiently resolve the problems created by the plaintiff's access road intersecting with Cromwell Avenue. (ROR, Item 67, p. 44.)
At their meeting of November 15, 2000, the commission considered the plaintiff's applications. The commission recognized that both the re-design of the West Cromwell intersection and the light at the access to plaintiff's project were dependent upon the decision of the State Traffic Commission. (ROR, Item 69, pp. 3, 5.) At the same time, the commission was committed to a light at the plaintiff's access point for traffic safety reasons. (ROR, Item 69, pp. 3, 6, 7.) The solution was for the plaintiff to return to the State Traffic Commission and, with the assistance of the town officials, strongly support the installation of the light. It would be demonstrated that a light farther up Cromwell Avenue from the West-Cromwell intersection could be timed to correspond with the lights at the intersection. (ROR, Item 69, pp. 4-5.)
After this discussion, the commission voted unanimously to approve the applications submitted by the plaintiff with conditions, including that the plaintiff install a traffic light where its project meets Cromwell Avenue, across from France Street. (ROR, Item 69, pp. 7-8.) The plaintiff has appealed from this decision to challenge the condition only.[1]
The standard of review in this case where no formal reasons were stated CT Page 16871 by the commission for the challenged condition "requires the court to search the entire record to find a basis for the commission's decision." (Citations omitted; internal quotation marks omitted.) ProjectHamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527, 544 (1991). "The reviewing court must take into account [that there is] contradictory evidence in the record . . . but `the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence' We have said that an administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." (Citations omitted; internal quotation marks omitted.) Huck v. InlandWetlands Watercourses Agency, 203 Conn. 525, 542 (1987).
The plaintiff first claims that the commission had no authority under its regulations to condition its approvals on a traffic-related issue. Several sections of the commission's regulations (ROR, Item 1) mention traffic considerations including granting special permits. See, e.g., Rocky Hill Zoning Regs. §§ 1.1(b) (general purpose of regulations to promote safety regarding transportation); 9.32(b) (proposed special use should not create traffic hazards); 9.46(a)(3) (in proposed site plan approval, must consider feeder streets to accommodate projected traffic volumes); 9.46(a)(8) (must consider location of any points of ingress and egress. . . .)
Our Appellate Court has stated that "[i]f, in denying the special permit, the zoning commission construed the special exception regulations beyond the fair import of their language, then the zoning commission acted in an arbitrary and illegal manner." (Citations omitted; internal quotation marks omitted.) Quality Sand Gravel, Inc. v. Planning Zoning Commission, 55 Conn. App. 533, 539 (1999); see also Irwin v.Planning Zoning Commission, 244 Conn. 619, 627 (1998) ("considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit"); TheChildren's School, Inc. v. Zoning Board of Appeals, 66 Conn. App. 615,626 (2001) (based on language of regulations, the commission may make use of both general and specific requirements).
The regulations here are sufficiently clear that traffic concerns may be taken into account by the commission in approving the plaintiff's applications. As the court stated in Grace Community Church v. Planning Zoning Commission, 42 Conn. Sup. 256, 278 (1992): "Reasonable and necessary conditions within the control of the applicant to alleviate traffic congestion in the vicinity of the site can be attached to a special permit." CT Page 16872
The plaintiff further argues that there was no substantial evidence to support the commission's decision to impose the traffic light condition. It claims that the evidence, including its own experts, established that the proposed project was not a significant generator of traffic. (Plaintiff's brief, p. 17.) As indicated above, the court must review the record to determine if substantial evidence exists for the commission's decision. In the record the police department's review documents indicate that a traffic light must accompany approval of the plaintiff's applications. (ROR, Items 7, 25, 50.) There is the personal observation of the commissioners that the intersection of Cromwell Avenue and West Street rates at the lowest level (Service F) and will be worsened by the construction of the access point up Cromwell Avenue. (ROR, Items 67, pp. 44, 50, 69, pp. 6-7.) Finally, the plaintiff's traffic engineer conceded that the current traffic intersection was dismal, in the course of suggesting a remedy that did not call for a traffic light at the access point to the project. (ROR, Item 67; p. 50.) This provides substantial evidence to support the decision to impose the condition. Raczkowski v.Zoning Commission, 53 Conn. App. 636, 643, cert. denied, 250 Conn. 921
(1999) (court's review is based on the record, which includes commission's personal knowledge of area involved).
The final issue raised by the plaintiff is one of jurisdiction — that the commission had no authority to direct the placing of the traffic light, a matter solely under the control of the State Traffic Commission. The plaintiff spends several pages of its brief to establish that the commission may not regulate traffic lights on state highways. (Plaintiff's brief, pp. 7-15.) The commission does not differ with this conclusion[2], but relies upon an exception: ". . . [T]he strict application of the rule as stated in Stiles v. Town Council, 159 Conn. 212,221 [(1970)] . . . to instances of . . . special use permits may often prevent desirable changes where the accomplishment of the change depends on cooperative or dependent action by the zoning authority and other municipal agencies over which it has no control. In such instances it is, of course, desirable, where feasible, that the zoning authority ascertain that there is a reasonable probability that such action will eventuate. . . . [W]here cooperative action is necessary to accomplish a desirable result, a stalemate can best be avoided by approval which may be conditional. We would, accordingly, hold that where . . . a special permit is granted and the grant is otherwise valid except that it is made reasonably conditional on favorable action by another agency or agencies over which the zoning authority has no control, its issuance will not be held invalid solely because of the existence of any such condition."Lurie v. Planning Zoning Commission, 160 Conn. 295, 307 (1971). See also Blaker v. Planning Zoning Commission, 212 Conn. 471, 482 (1989). "Nowhere did we intimate . . . that, in order to be valid, conditional CT Page 16873 approval requires evidence that the other agency will act favorably on the future request. . . . [I]t would be contrary to the policy of allowing a planning and zoning commission `to make the first move and the decision as to the conditions under which it would approve the issuance of a permit. . . .'" Blaker v. Planning Zoning Commission, supra, 212 Conn. 482, quoting Lurie v. Planning Zoning Commission, supra, 160 Conn. 307.
The evidence of record shows that the commission imposed a condition that requires the State Traffic Commission to take action on the issue of whether a traffic light is proper at the access point of the plaintiff's project. The plaintiff argues that in the record is the admission by the commission that the State Traffic Commission had previously indicated its doubts about installation of the traffic light at the access point and therefore the condition is not reasonable. (Plaintiff's brief, p. 24.) On the other hand, the record also contains statements to indicate that the initial reaction by the State Traffic Commission was given under incomplete circumstances. (ROR, Item 67, pp. 42-43.) The commission and other town officials never fully argued their case before the State Traffic Commission that the project's traffic light was essential, and there were means to coordinate the existing and projected traffic lights, even though close to one another. (ROR, Item 69, pp. 5-6.) Finally, the plaintiff itself repeatedly stated that it would work to ensure the installation of the light, if the commission specifically set forth that condition. (See, e.g., ROR, Item 67, p. 54.)
Based upon this record, the court concludes that the commission's condition was reasonable, as contemplated in Lurie. Therefore, the appeal is dismissed.
Henry S. Cohn, Judge